### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

## AT MILLEDGEVILLE,

# NOVEMBER TERM, 1859.

Present—JOSEPH H. LUMPKIN,
HENRY L. BENNING,      } Judges.
LINTON STEPHENS,

---

SUSAN W. LIVELY and HUSBAND, plaintiffs in error, vs. THOMAS B. HARWELL, executor, defendant in error.

[1.] The probate of a will made upon only five days notice to the widow of the testator, at a time when she is in a novel and distressed condition, is not probate *in solemn form* as to her.

[2.] A will being revoked by the subsequent execution of an inconsistent one, is it revived by the single fact that the subsequent will is itself afterwards revoked?

[3.] A will having been last known in the custody of the testator, and not found after his death, is presumed to have been destroyed by him.

Petition to revoke probate of will and letters testamentary, in Putnam Superior Court. Tried before Judge HARDEMAN, at September Term, 1859.

This was a proceeding before the Court of Ordinary, on the part of Susan W. Lively, the widow of Lewis P. Harwell, deceased; but who, since his death, has intermarried with George W. Lively, and the said George W., to annul

and revoke the probate of a paper pronounced and recorded as the last will and testament of said deceased by said Court of Ordinary, upon the grounds:

1st. Because said paper writing, dated 15th February, 1858, after the making thereof, was in the lifetime of deceased revoked by him, by the execution and publication of a will of a later date, to-wit: about 1st July, 1858.

2d. Because, after the revocation of the will of 15th February, 1858, the same was never republished or revived by deceased.

3d. Because the paper dated 15th February, 1858, is not the last will and testament of deceased, but the paper of 1st July, 1858, and that the former was improperly admitted to record and probate..

4th. Because the will or paper of July, 1858, has never been produced for probate, or in any matter put in issue.

Thomas B. Harwell, the executor of the will of February, 1858, and to whom letters testamentary thereon had been granted, on being served with a copy of the petition, and an order or rule to show cause why said probate and letters should not be revoked, appeared, and for cause why, &c., showed:

1st. That said Susan W., the widow and heir at law of deceased, was duly cited to be and appear at the Court of Ordinary, where and when said probate was granted. That she failed to appear, but permitted said will to be admitted to record, expressing herself satisfied that the same should be probated. And having been thus made a party to said proceeding, she is now concluded by the action and judgment of said Court.

2d. That since said probate and the granting of letters testamentary to respondent, the said Susan W. has had in possession and under her control, the house and lot and furniture devised and bequeathed to her for life, in and by said

will, and that she has not returned or made an offer to return the same to respondent.

3d. That said Susan W. has recognized respondent as the executor of said will; acquiesced in his qualification, and purchased property at the sale made by him as executor, and received from him the twelve months' support allowed to her by law.

For the foregoing reasons, respondent submitted that said Susan W. was estopped from contesting said probate and letters, and from moving to annul and revoke the same.

Respondent further answered, that said probate should not be revoked, because said will was not revoked by Lewis P. Harwell in his lifetime; and even if there was a later will, as alleged, the same had no revoking clause—was not materially different in its provisions from the one probated—and such later will being in the possession of deceased, and not found since his death, the presumption is that he destroyed it, and thereby revived and set up the will probated.

After argument, the Ordinary dismissed the rule, holding that movants were estopped by the proceedings had upon the probate; and holding further, that said probate was in solemn form. From this decision movants appealed, and the cause being transferred to the Superior Court, came on for trial at September Term, 1859. At the conclusion of the testimony, and after argument, the Court, at the request of counsel for respondent, charged as follows:

1st. That when citation is duly issued to the heir at law, and served, to appear and witness the probate of a will, and the will is proven by a public examination of the witnesses in Court, the probate is in solemn form as to said heir at law.

2d. That the proof of the execution of a later will and of its contents, does not revoke the probate of a prior will, made in solemn form, unless the original is proved to have been lost or destroyed, or fraudulently suppressed.

3d. That the probate of a prior will is not revoked by a later will, unless the original or a copy of the same is sought

to be set up by some one having an interest under it, and is propounded for probate in lieu of the prior will.

4th. That when a will is proven to have been delivered to the testator immediately after its execution, and deposited by him among his valuable papers, and after his death diligent search is made for it and it cannot be found, the presumption of law is, that the testator himself destroyed, and thereby revoked it, and the *onus* is cast upon the party seeking to set it up, to show that it was destroyed, or fraudulently suppressed or lost.

5th. That by the Ecclesiastical Law, a later will does not revoke a prior will, unless there is an express revocatory clause, or a conflict in the two provisions of the two wills; and in that event, whether the revocation of the last will sets up or revokes the prior will, is a question of intention to be left to the jury.

To the first four foregoing charges given, as requested, counsel for movants excepted.

The jury found for the respondent; whereupon, counsel for movants moved for a new trial upon the following grounds:

1st. Because the verdict was contrary to law and the evidence.

2d. Because the first request, as given in charge, although correct as a general legal proposition, yet, under the facts of the case, being a proceeding not for a second probate, but to revoke one already granted, tended to mislead the jury, and to induce them to believe that the presiding Judge held, that the probate was not only in solemn form, but that it estopped plaintiffs from moving to revoke it, even after the proof of a later will revoking the one admitted to probate.

3d. Because the charge of the Court, in the language of the second, third and fourth requests, was erroneous.

The Court overruled the motion, and refused a new trial; to which decision counsel for movants excepted, and assigned the same as error.

W. McKinly; and J. W. Hudson, for plaintiffs in error.

E. A. & J. A. Nisbet, *contra.*

*By the Court.*—Stephens J. delivering the opinion.

Error is assigned in this case on the first four charges given by the Judge.

[1.] The first charge gives correctly the abstract law as to what constitutes probate in solemn form, but we think it was error to give that charge in this case, because there were not facts which could, as we think, have authorized the jury to conclude that the probate which was attacked, had been made in solemn form. The widow, in this case, had but five days notice of the time when the will would be propounded, and we do not think that was sufficient notice, under the circumstances. True, there is no time prescribed, so far as we are informed, but a *reasonable* time has always been required by the Courts. We do not think that five days was a reasonable notice to a woman who had been very recently thrown, perhaps for the first time in her life, upon her own business talents, under circumstances of such affliction as would naturally draw her thoughts away from subjects of business. This was a very important matter to her, and five days was too short a period for one in her novel and distressed condition to make the necessary preparation of procuring skillful counsel, and looking up evidence. This view is greatly strengthened by analogy. In the Superior and Inferior Courts of this State, the party defendant is allowed twenty days within which to make up his pleadings, and then six months afterwards to prepare his evidence. Even in Justices' Courts, whose jurisdiction is limited to very small and comparatively unimportant amounts, the defendant has ten days for the preparation of his pleadings, and a month afterwards to prepare his evidence. Here, a matter of great

consequence was in issue, and Mrs. Harwell was required to procure counsel, make up her pleadings, and hunt up and produce her evidence, all within the short space of five days. There is obviously *some* limit to the shortness of a valid notice—nobody will say a minute or an hour will do—and we are constrained to think that the time allowed in this case was unreasonably short. There was, therefore, no evidence to authorize the jury to consider that there had been a probate in solemn form, and that issue ought not to have been submitted to them.

The second charge was founded on the first, and of course falls with it. There had been no probate in solemn form, and it was error to base a charge on the theory of such a probate.

[2.] The third charge is manifestly inconsistent with the fifth, which certainly presents the law for the executor as favorably as it exists. This third charge relates to the revocation of probate generally, probate in common form as well as probate in solemn form. Bearing this in mind, its inconsistency with the fifth charge is easily shown. Now, probate in common form does not bind the heir, nor does even probate in solemn form bind her, when the revocation is sought on the discovery of a later will which was not known at the time of the probate. And when she is *not bound* by the probate, she may have it revoked for any cause which would have defeated it at first. This charge then is equivalent to an assertion that the probate of a will can not be defeated by showing that a later inconsistent will was executed, unless that later will be propounded for probate. Now, suppose the later will to have been *revoked*—if so, *it* cannot be propounded for probate, and yet, according to the proposition contained in the fifth charge, it may defeat the probate of the older will, according as the last was revoked with an intention to revive the first or not. That is to say, the third charge asserts that a later will can not defeat the probate of a prior one, unless the later is itself carried to probate; while

the fifth charge asserts that the later will, *without* being offered for probate, may or may not defeat the prior one. This third charge then is inconsistent with the fifth. But the material inquiry is, whether it is inconsistent with the *law?* We think it is; for we think the fifth charge gives the law quite as favorably to the executor as he was entitled to have it. There was no error assigned upon the fifth charge, and we shall not deliver any judgment on it; but as the question involved in it was thoroughly argued by both sides, I will state, for a future guide in discussing the point, what was the inclination of Judge Benning and myself (Judge Lumpkin being absent), and I will add that subsequent reflection and examination of authorities have strengthened my own impression. It has been a long mooted question whether the single fact of the revocation of a subsequent will, revives a prior revoked one. The argument in favor of the revival is this : The first will would be good but for the last which revokes it, and this last being itself afterwards revoked, becomes a *nullity*—has no effect whatever, and of course leaves the prior will unaffected. And it is analogized to the case of a statute revived by the repeal of another which had repealed the first. Such is the rule of the common law in the case of *statutes*, but the civil law is different, and so is the good reason of the thing different. Where a principle is *sound*, it ought to be carried to all strictly analagous cases, unless stringent authority forbids; but if the principle be *unsound*, analogy ought not to be allowed to carry it to a single case beyond the imperative demands of authority—the cases in which it has been already planted by decisions. Then is it a sound *logical* principle that a statute is revived by killing the statute which had previously killed the first ? Is a dead man revived by killing his slayer ? Is not the result rather this: whereas you had at first one dead man, now you have two ? But this is itself but an analogy, and analogies are often fallacious from want of exact parallelism in the two cases. Take, therefore, the case before us. Here are two

wills of different dates and inconsistent provisions, and the last one, in point of date, is confessedly revoked. Which of these papers, or does either show the final testamentary mind of the testator? I say neither does. The last one does not, as is admitted by everybody, for it is expressly revoked. How is it with the first? That contains what was *once* his mind, but we know that he changed that mind when he *made the last one.* How do we know that he ever reverted *to it?* It is said that he changed again when he revoked the last. This is true, but *to* what did he change? The case is this: he had a scheme and abandoned it for another, and then abandoned the second. All so far is clear and satisfactory, but can you go further and say that, when he abandoned the last, he returned to the first? If these two schemes comprehended ALL *the possible dispositions* of his property, then the conclusion would be a logical one, that when he abandoned the one he returned to the other. But when the number of possible schemes in every case is legion, you can not say that because he has departed from any one, you know his mind has settled upon any other particular one out of that infinite number. The whole fallacy lies in assuming that the two papers *exhaust* the subject. It seems to me that the abandonment of any one scheme does not of itself afford the least *indication* in favor of any other particular one out of an infinite number. Then it can not be said, as the third charge declares, that the probate of a will can not be defeated or revoked by proof of a later inconsistent will, unless the last one itself goes to probate. The question on the probate of a will is, whether the paper propounded contains the final testamentary scheme of the testator? If it dont, it is not his will, and any paper which shows that though the paper propounded was once his will, it had *ceased* to be so, would defeat the proposed probate, (without rebutting proof) whether such later paper were itself offered for probate or not.

[3.] The fourth charge is good, so far as it relates to the presumption of the destruction of a will by the testator him-

self, arising from the fact that it was last known in his custody and can not now be found; but so far as it relates to the burden being cast on the person seeking to *set up* the missing will, we think it is erroneous for two reasons. It assumes that the caveatrix was attempting to set up the missing will, when she was in fact claiming an intestacy. It was therefore inapplicable to the case. It was wrong, also, because it rests upon the third as its basis, and of course falls with it.

Judgment reversed.